UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


| | | |
|---|---|---|
| PAPKEN HARTUNIAN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil No. 3:21-cv-30089-KAR |
| | ) | |
| | ) | |
| CONSTANCE M. SWEENEY, individually, and | ) | |
| as a Judge of the Superior Court, KAREN L. | ) | |
| GOODWIN, individually, and as a Judge of the | ) | |
| Superior Court, MERCY MEDICAL CENTER, | ) | |
| LAURA S. GENTILE, individually and as Clerk | ) | |
| of Courts, LOIS A. CIGNOLI, individually and as | ) | |
| an Assistant Clerk of Courts, DOES 1-10 inclusive, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |


MEMORANDUM AND ORDER ON DEFENDANT, MERCY MECIDAL CENTER [SO-NAMED]'S, MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND DEFENDANT SWEENEY, GOODWIN, GENTILE, AND CIGNOLI'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
(Dkt. Nos. 8 and 10)

ROBERTSON, U.S.M.J.

*Pro se* plaintiff Papken Hartunian ("Plaintiff") brings this action alleging claims under

federal law, the United States Constitution, and Massachusetts law arising out of a medical

malpractice proceeding he instituted in the Superior Court Department of the Massachusetts Trial

Court in 2015.  Defendants include two judges, two clerks of court, the medical facility where he

sought treatment, and Does 1-10.

The defendants Constance M. Sweeney ("Judge Sweeney"), Karen L. Goodwin ("Judge

Goodwin"), Laura S. Gentile ("Clerk Gentile"), and Lois A. Cignoli ("Clerk Cignoli")

(collectively, the "Commonwealth Defendants") are judicial and quasi-judicial officers of the

Superior Court Department of the Massachusetts Trial Court.  Plaintiff alleges that their conduct

in the medical malpractice proceedings violated the First and Fourteenth Amendments to the

United States Constitution and 42 U.S.C. §§ 1981 and 1983.  Plaintiff further alleges that the

defendant Mercy Medical Center ("Mercy")[1] committed fraud on the court to obtain a judgment

of dismissal in the underlying action.  The Commonwealth Defendants and Mercy have moved

separately to dismiss all claims against them under Fed. R. Civ. P. 12(b)(1) for lack of subject-

matter jurisdiction and (b)(6) for failure to state a claim (Dkt. Nos. 8, 10).  The parties have

consented to this court's jurisdiction (Dkt. No. 16).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

For the following reasons, the court GRANTS the Commonwealth Defendants' and Mercy's

motions.

## I.      LEGAL STANDARD

"When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court,

absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first."

*Ayyadurai v. Galvin*, 560 F. Supp. 3d 406, 410 (D. Mass. 2021) (quoting *Ne. Erectors Ass'n of*

*BTEA v. Sec'y of Lab., Occupational Safety & Health Admin.*, 62 F.3d 37, 39 (1st Cir. 1995)).

"When a defendant moves to dismiss for lack of federal subject matter jurisdiction [under

Rule 12(b)(1)], '"the party invoking the jurisdiction of a federal court carries the burden of

proving its existence."'" *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quoting

*Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.), *cert. denied,* 515 U.S. 1144 (1995)).  "If the

party fails to demonstrate a basis for jurisdiction, the district court must grant the motion to

dismiss." *Id*.  The district court "must credit the plaintiff's well-pled factual allegations and draw

---

[1] This is the name assigned by Plaintiff.  Mercy's counsel has indicated that the correct legal
name of the entity is The Mercy Hospital, Inc.

all reasonable inferences in the plaintiff's favor" when ruling on a Rule 12(b)(1) motion. *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010) (citing *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)).  In evaluating whether the party has met its burden of proof, the court "may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations."  *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 37 (1st Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 890-91 (3d Cir. 1977)).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must state a claim that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility requires factual allegations sufficient to raise a right to relief above the speculative level.  *Id*. at 555.  In evaluating a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  Dismissal is appropriate if the complaint fails to set forth """"factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.""""  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

Because Plaintiff appears *pro se*, the Court construes his pleadings more favorably than it would those drafted by an attorney.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Notwithstanding his *pro se* status, Plaintiff must comply with procedural and substantive law.  *See Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st

3

Cir. 1997) (citing *Eagle Eye Fishing Corp. v. United States Dep't. of Commerce*, 20 F.3d 503, 506 (1st Cir. 1994)).

## II.    FACTUAL BACKGROUND[2]

In late April 2012, Plaintiff sustained a laceration to his right hand, and he went to Mercy to obtain medical treatment (Dkt. No. 2 at ¶¶ 20-21).  Approximately three years later, Plaintiff brought a medical malpractice action in the Hampden County Superior Court against Mercy and a number of unnamed defendants arising from the allegedly negligent medical care he received (Dkt. No. 2 at ¶¶ 33-34).  On May 10, 2016, with leave of court, Plaintiff filed an amended complaint to substitute certain named defendants for "Doe" defendants (Dkt. No. 2 at ¶¶ 46, 56, 58).  On May 27, 2016, Mercy filed an application for final judgment pursuant to Mass. R. Civ. P. 33(a), and that same day, the court entered judgment for Mercy against Plaintiff with statutory costs (Dkt. No. 2 at ¶¶ 55, 59-60).[3]  Plaintiff filed a motion to vacate the judgment of dismissal, which the Superior Court denied on August 17, 2016 (Dkt. No. 2 at ¶ 65; Dkt. 9-1 at 9).  The Superior Court later entered judgments of dismissal in favor of each of the individual defendants as well, which Plaintiff appealed (Dkt. No. 9-1 at 19-22).  With leave of the Appeals Court, Plaintiff filed a motion for relief from judgment as to Mercy, as well as the other defendants, but it was denied (Dkt. No. 2 at ¶¶ 147, 150; Dkt. No. 9-1 at 22-24).  While Plaintiff attempted to

---

[2] The facts, which are accepted as true for purposes of ruling on this motion, are drawn from Plaintiff's verified complaint (Dkt. No. 2) and are augmented with "data points gleaned from … matters of public record," *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)), including specifically documents from the prior state court adjudication instituted by Plaintiff.  *See Boateng v. InterAm. Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000), *cert. denied*, 531 U.S. 904 (2000) (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ("[A] court ordinarily may treat documents from prior state court adjudications as public records.").

[3] Pursuant to Mass. R. Civ. P. 33(a)(4), a party may file a written application for entry of final judgment for relief or dismissal in the event that an opposing party fails to answer or object to written interrogatories within a specified time after being served with a final request for answers.

appeal the Superior Court's dismissal of Mercy, the Massachusetts Appeals Court determined

that his efforts were not timely and, therefore, it lacked jurisdiction to hear an appeal against

Mercy (Dkt. No. 9-11 at 6).  The Appeals Court also determined that it lacked jurisdiction to hear

an appeal from the denial of Plaintiff's motion for relief from judgment, as Plaintiff did not file a

notice of appeal from that order (Dkt. No. 9-11 at 6).  The Appeals Court affirmed the judgments

for the individual defendants on December 21, 2020 (Dkt. No. 9-11).  On February 12, 2021, the

Supreme Judicial Court denied Plaintiff's application for further appellate review (Dkt. No. 11-3

at 2).  On June 24, 2021, Plaintiff filed a motion to set aside the judgment, which the Superior

Court denied that same day (Dkt. No. 9-1 at 26).

## III.    PLAINTIFF'S CLAIMS

Plaintiff asserts a total of twenty-one causes of action including:  fraud against Judge

Sweeney in connection with statements she made in memoranda of decision and court

proceedings accusing Plaintiff of delay tactics, deliberately ignoring notice and disclosure

requirements, and chronic non-compliance with the Massachusetts Rules of Civil Procedure and

Superior Court rules, as well as allegedly fraudulently concealing a leave of absence she was

taking (Counts I-VI); claims for denial of his right to procedural due process against Judge

Sweeney for failing to comply with Superior Court Standing Order I-88 on Time Standards and

for vacating a final pre-trial conference date while hearing other matters on the date the

conference was to have been held (Counts VII, IX); a claim for violation of his first amendment

right to petition against Clerks Gentile and Cignoli for entering the dismissal judgment in favor

of Mercy (Count VIII); a claim for violation of his right to procedural due process against Clerks

Gentile and Cignoli for failing to provide Plaintiff with certain notices (Count X); a claim for

violation of his right to equal protection against Judge Sweeney for refusing to accept pleadings

from Plaintiff while accepting them from a defendant and for not requiring the defendants to

comply with Superior Court Rule 9A (Count XI); a claim for defamation against Judge Sweeney

for statements made in a memorandum of decision (Count XII); claims for declaratory relief

against Mercy "[f]or an order of this Court setting aside and vacating the alleged dismissal

judgment entered on May 27, 2016, in the original Complaint on the grounds that said judgment

is void on the grounds that it was procured due to Fraud on the Court or by mistake," and for an

order declaring "Defendant Mercy is in default by failing to file an answer to Hartunian's First

Amended Complaint" (Counts XIII and XVI); a claim for injunctive relief against Clerks Gentile

and Cignoli requiring them to remove the docket entry dismissing Mercy as a defendant (Count

XIV); a claim for declaratory relief against Judge Sweeney that "the purported final judgment

entered on March 8, 2019, is void" (Count XVII); a claim for declaratory judgment "that the

purported final judgment entered on May 27, 2016 is void" (Count XV); a claim for violation of

his first amendment rights by Judge Sweeney and Clerks Gentile and Cignoli for "cancelling"

certain of Plaintiff's pleadings (Count XVIII); a claim for breach of fiduciary duty against Judge

Sweeney for making misrepresentations of fact in the record (Count XIX); a claim for breach of

fiduciary duty against Judge Goodwin and Clerks Gentile and Cignoli for, *inter alia*, failing to

notify Plaintiff about a Rule 16 conference (Count XX); and a claim for denial of his right to

procedural due process against Judge Sweeney and Clerks Gentile and Cignoli for failing to

mark-up Mercy's motion to compel for a hearing (Count XXI).

IV.   **DISCUSSION**

A.   Fed. R. Civ. P. 12(b)(1)

1.   *Eleventh Amendment Immunity of the Commonwealth Defendants in their Official Capacities*

The Commonwealth Defendants contend that Plaintiff's claims against them are barred by the Eleventh Amendment.  Plaintiff offers no rebuttal.

"The Eleventh Amendment of the United States Constitution generally is recognized as a bar to suits in federal courts against a state, state officials in their official capacities, and state departments and agencies, unless the state has consented to suit or Congress has overridden the state's immunity." *Howell v. Massachusetts Att'ys Gen.*, No. Civil Action No. 21-11979-ADB, 2022 WL 2806683, at *4 (D. Mass. July 18, 2022) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam)).  Eleventh Amendment immunity is jurisdictional in nature.  *Centro de Periodismo Investigativo, Inc. v. Fin. Oversight & Mgmt. Bd. for P.R.*, 35 F.4th 1, 9 (1st Cir. 2022).

Here, Plaintiff's claims against the Commonwealth Defendants include intentional torts of fraud, defamation, and breach of fiduciary duty, as well as denial of due process, violation of the First Amendment, and violation of Equal Protection, all brought pursuant to 42 U.S.C. § 1983.[4]  Plaintiff has not shown that the Commonwealth has waived immunity from suit in

---

[4] Plaintiff also invokes 42 U.S.C. § 1981 but that section prohibits race-based discrimination, and there are no allegations in the complaint pertaining to Plaintiff's race or any discrimination based on race.  *See* 42 U.S.C. § 1981 ("All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment,

federal court as to any of these counts.  *See Mahon v. United States*, 742 F.3d 11, 14 (1st Cir.

2014) (citing *Skwira v. United States*, 344 F.3d 64, 71 (1st Cir. 2003)) (noting that the plaintiff

bears the burden of proving that immunity has been abrogated or otherwise waived).  Indeed,

under the Massachusetts Tort Claims Act, the Commonwealth expressly retains immunity for

intentional torts.  *See* Mass. Gen. Laws ch. 258, § 10(c).  Regarding Plaintiff's constitutional

claims, "[i]t is well settled that Congress did not

abrogate Eleventh Amendment sovereign immunity by enacting 42 U.S.C. § 1983."[5]  *Mazzarino*

*v. Mass. State Lottery Comm'n*, No. Civil Action No. 21-11516-MPK, 2022 WL 2713733, at *4

(D. Mass. July 13, 2022) (citing *Will*, 491 U.S. at 66).  *See also Johnson v. Rodriguez,* 943 F.2d

104, 108 (1st Cir.1991) ("It is settled beyond peradventure, however, that neither a state agency

nor a state official acting in his official capacity may be sued for damages in a section 1983

action.").  Thus, Plaintiff's state common law and constitutional claims for damages against the

Commonwealth Defendants in their official capacities must be dismissed.

  Plaintiff also brings claims for injunctive and declaratory relief against the

Commonwealth Defendants.  "While the Eleventh Amendment prohibits a party from bringing

suit against a state in federal court, *see De Leon Lopez* [*v. Corporacion Insular de Seguros*], 931

F.2d [116,] 121 [(1st Cir. 1991)], it does not prohibit a party from bringing suit against a state

officer in federal court for prospective declaratory or injunctive relief under federal law."

*Asociación De Subscripción Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores*

---

pains, penalties, taxes, licenses, and exactions of every kind, and to no other.").  Accordingly, to
the extent that Plaintiff intended to assert claims under 42 U.S.C. § 1981, they are subject to
dismissal.

[5] "Moreover, 'neither a State nor its officials acting in their official capacities are "persons"
under 42 U.S.C. § 1983,' the statute under which a person may bring a lawsuit against a person
acting under color of state law who violated the federal rights of the plaintiff."  *Howell*, 2022
WL 2806683. at *4 n.6 (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

*Galarza*, 484 F.3d 1, 24 (1st Cir. 2007) (citing *Ex parte Young,* 209 U.S. 123, 155 (1908)).  "*Ex parte Young* thus 'allows a way around the bar to federal jurisdiction ... in cases where prospective declaratory or injunctive relief is sought under federal law.'"  *Id*. (quoting *Mills v. Maine,* 118 F.3d 37, 54 (1st Cir.1997)).  Under *Ex parte Young*, individuals can sue state officials only for *prospective* injunctive relief.  *See Rosie D. ex rel. John D. v. Swift*, 310 F.3d 230, 234 (1st Cir. 2002).  It does not permit "judgments against state officers declaring that they violated federal law in the past" or any other "claims for retrospective relief."  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 145-46 (1993) (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)).  The purpose of the *Ex parte Young* exception is "to prevent continuing violations of federal law, ... not to remedy past violations."  *Greenless v. Almond,* 277 F.3d 601, 607 (1st Cir. 2002).

To determine whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, the court conducts a so-called "straightforward inquiry," asking whether the complaint "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)).  "This inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim, *Verizon Md.*, 535 U.S. at 646, and the pivotal question to be decided when a defendant brings a motion to dismiss is whether the requested relief would directly bring an end to an ongoing violation of federal law."  *Hootstein v. Collins*, 670 F. Supp. 2d 110, 114 (D. Mass. 2009) (citing *Papasan v. Allain,* 478 U.S. 265, 278 (1986)).

In this case, Plaintiff seeks "a declaratory judgment that Hartunian was not involved in delay tactics and bad faith in course of litigation of the underlying action …" (Dkt. No. 2 at 54,

58, 65); "for declarative judgment to be entered against the defendant Mercy as follows: … For

an order of this Court setting aside and vacating the alleged dismissal judgment entered on May

27, 2016, in the original Complaint on the grounds that said judgment is void on the grounds that

it was procured due to Fraud on the Court or mistake" (Dkt. No. 2 at 72); "for an injunction that

requires defendant Laura S. Gentile, Clerk of Courts, or her agent, to remove the docket entry

reflecting that defendant Mercy has been dismissed from the prior action. Because there was no

legal or factual basis or court order to remove defendant Mercy from the case" (Dkt. No. 2 at

72); "for a declarative judgment that the purported final judgment entered on May 27, 2016, is

void" (Dkt. No. 2 at 74); "for judgment to be entered against the defendant Mercy as follows: …

Defendant Mercy is in default by failing to file an answer to Hartunian's First Amended

Complaint" (Dkt. No. 2 at 75); and "For a declarative judgment that the purported final judgment

entered on March 8, 2019, is void" (Dkt. No. 2 at 77).  Consideration of these requests for relief

reveals that Plaintiff's claims for injunctive and declaratory relief are completely focused on past

occurrences in the underlying and now-complete state medical malpractice litigation.  Because

plaintiff is seeking a remedy for alleged past violations of federal law rather than to end an

alleged ongoing, present violation, his claims are barred by the Eleventh Amendment and must

be dismissed.  *See Papasan*, 478 U.S. at 277-78; *see also Verizon Md.*, 535 U.S. at 645.

In sum, all of Plaintiff's claims against the Commonwealth Defendants in their official

capacities are subject to dismissal pursuant to the Eleventh Amendment.  In contrast, the

Eleventh Amendment does not bar claims for damages against officials in their individual

capacities.  *Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 76 (1st Cir. 2019) (citing

*Hafer v. Melo*, 502 U.S. 21, 26 (1991)).  Thus, Plaintiff's claims against the Commonwealth

Defendants in their individual capacities survive their Eleventh Amendment challenge.

2. *Rooker-Feldman Doctrine*

Both Mercy and the Commonwealth Defendants contend that Plaintiff's claims against them, are barred by the *Rooker-Feldman* doctrine.[6]  "Under the *Rooker-Feldman* doctrine, 'lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.'" *Tyler v. Supreme Judicial Court of Mass.*, 914 F.3d 47, 50 (1st Cir. 2019) (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006)).  The *Rooker-Feldman* doctrine bars a federal court from having jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  "The doctrine prevents losing litigants 'from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights,' as only the Supreme Court has jurisdiction to review the decision of a state court in civil litigation." *Efreom v. McKee*, No. 21-1382, 2022 WL 3483975, at *5 (1st Cir. Aug. 18, 2022) (quoting *Exxon Mobil Corp.*, 544 U.S. at 287).  Application of the *Rooker-Feldman* doctrine is "not contingent upon an identity between the issues actually litigated in the prior state-court proceedings and the issues proffered in the subsequent federal suit," *Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d, 61, 66 (1st Cir. 2018) (citing *Maymó-Meléndez v. Álvarez-Ramírez*, 364 F.3d 27, 33 (1st Cir. 2004)), but rather turns on "whether the plaintiff's federal suit is, in effect, an end-run around a final state-court judgment." *Id.* (citing *Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 24 (1st Cir. 2005)).  "When *Rooker–*

---

[6] The *Rooker-Feldman* doctrine derives from two cases: *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923) and *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

*Feldman* applies, this court lacks subject matter jurisdiction to review a state court judgment

even if the judgment is wrong or was entered following patently unconstitutional proceedings."

*Brady v. Howard*, No. Case No. 21-cv-614-PB, 2022 WL 88159, at *3 (D.N.H. Jan. 7, 2022)

(citing *Feldman*, 460 U.S. at 486).

This court turns first to Plaintiff's claims against Mercy, which relate to Mercy's

application for final judgment pursuant to Mass. R. Civ. P. 33(a) and the resulting order and

judgment dismissing Mercy from the case. All the elements for applicability of the *Rooker-*

*Feldman* doctrine are met. First, Plaintiff lost in the underlying medical malpractice proceeding.

Second, Plaintiff's alleged injuries vis-à-vis his claims against Mercy are caused by the state

court's dismissal in favor of Mercy, which Plaintiff alleges Mercy procured by committing fraud

on the court. Third, Plaintiff did not institute this action until August 24, 2021, seven-plus

months after the Supreme Judicial Court's February 12, 2021, denial of his application for

further appellate review. *See Federación de Maestros de P.R.*, 410 F.3d at 24 ("[W]hen the

highest state court in which review is available has affirmed the judgment below and nothing is

left to be resolved, then without a doubt the state proceedings have 'ended.'"). Finally, Plaintiff

explicitly invites this court to review and reject the order of dismissal of the Superior Court and

to declare Mercy in default (Dkt. No. 2 at 72 (seeking "[a]n order of this Court setting aside and

vacating the alleged dismissal judgment entered on May 27, 2016, in the original Complaint on

the grounds that said judgment is void on the grounds that it was procured due to Fraud on the

Court or mistake"), 75 (seeking a declaration that "Defendant Mercy is in default by failing to

file an answer to Hartunian's First Amended Complaint"). Accordingly, under the *Rooker-*

*Feldman* doctrine, this court is without jurisdiction to hear Plaintiff's claims against Mercy.

Plaintiff fares no better with respect to his claims against the Commonwealth Defendants. "The *Rooker-Feldman* doctrine also prohibits a district court from adjudicating constitutional claims that are 'inextricably intertwined' with decisions made in state court proceedings." *Doe v. Spears*, 393 F. Supp. 3d 123, 134 (D. Mass. 2019) (citing *Hill v. Town of Conway*, 193 F.3d 33, 39 (1st Cir. 1999)). "A claim is 'inextricably intertwined' with a state court decision if the claim 'succeeds only to the extent that the state court wrongly decided the issues before it.'" *Id*. (quoting *Hill*, 193 F.3d at 39). Moreover, "[t]he *Rooker–Feldman* doctrine is properly applied 'where, regardless of how the claim is phrased, "the only real injury to Plaintiffs is ultimately still caused by a state-court judgment."'" *DuLaurence v. Telegen*, 94 F. Supp. 3d 73, 80 (D. Mass. 2015), *aff'd*, No. 15-1537, 2016 WL 10454553 (1st Cir. Nov. 30, 2016) (quoting *Silva v. Massachusetts*, 351 Fed. Appx. 450, 455 (1st Cir. 2009)).

In Plaintiff's claims for declaratory relief, he explicitly asks this court to declare the final judgments entered against him on May 27, 2016, and March 8, 2019, void, relief which is plainly intertwined with the merits of the Superior Court's decisions. So, too, are Plaintiff's claims about the state court process inextricably intertwined with the decisions made in the underlying state proceeding. While Plaintiff raises civil rights claims relative to that process, Plaintiff can succeed on these claims only if this court determines that the state court judgements were erroneous. *See Davison v. Gov't of P.R. – P.R. Firefighters Corp.*, 471 F.3d 220, 223 (1st Cir. 1995) (holding that, although the plaintiffs were challenging the state court process rather than substantive legal decisions, they were nonetheless alleging that their injury resulted from the state court's refusal to grant them relief). With respect to Plaintiff's state common-law claims for fraud, defamation, and breach of fiduciary duty, the only real injury to Plaintiff flows from the state court judgement, and, thus, they, too, fall within the scope of *Rooker-Feldman*. *See*

*DuLaurence*, 94 F. Supp. 3d at 80.  Finally, Plaintiff's request "for injunctive relief [ordering

Clerks Gentile and Cignoli to enter a default judgment against Mercy] is an effort to do an end

run around the state court's judgment," *Miller v. Nichols*, 586 F.3d 53, 59 (1st Cir. 2009), which

is prohibited by *Rooker-Feldman*.  Accordingly, under the *Rooker-Feldman* doctrine, this court

is also without jurisdiction to hear Plaintiff's claims against the Commonwealth Defendants.

In Plaintiff's argument against application of *Rooker-Feldman*, he cites to only two cases

– *Treglia v. MacDonald*, 717 N.E.2d 249 (Mass. 1999), and *In re Morency*, Case No. 10-13666-

JNF, 2015 WL 5545469 (Bankr. D. Mass. Sept. 18, 2015) – neither of which includes any

discussion of *Rooker-Feldman*.  To the contrary, both concern the application of collateral

estoppel.  *See Treglia*, 717 N.E.2d at 252-54; *In re Morency*, 2015 WL 5545469, at *24-26.

Thus, they are of no assistance to Plaintiff.

In sum, the *Rooker-Feldman* doctrine bars Plaintiff's claims against Mercy and the

Commonwealth Defendants, and they are subject to dismissal for lack of jurisdiction.

B.  <u>Fed. R. Civ. P. 12(b)(6)</u>

1.  *Absolute Judicial Immunity*

Even if the court had jurisdiction to hear Plaintiff's claims against the Judges Sweeney

and Goodwin, which it does not, they would be shielded by judicial immunity from Plaintiff's

claims.  Judicial immunity is an affirmative defense that may be raised by a Rule 12(b)(6)

motion to dismiss "'provided that the facts establishing the defense [are] clear on the face of the

complaint.'" *Zenon v. Guzman*, 924 F.3d 611, 616 (1st Cir. 2019) (quoting *Santana-Castro v.*

*Toledo-Dávila*, 579 F.3d 109, 113-14 (1st Cir. 2009)).  "Like other forms of official immunity,

judicial immunity is an immunity from suit, not just from ultimate assessment of damages."

*Mireles v. Waco*, 502 U.S. 9, 11 (1991).

"Few doctrines are more solidly established at common law than the immunity of judges from liability or damages for acts committed within their judicial jurisdiction …." *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967).  "The breadth of the protection is fulsome, shielding judges even when their actions are malicious, corrupt, mistaken, or taken in bad faith; its purpose not to buffer bad judges but 'for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.'" *Zenon*, 924 F.3d at 616 (quoting *Pierson*, 386 U.S. at 554).  Even "grave procedural errors" are not enough to support a claim against a judge. *Stump v. Sparkman*, 435 U.S. 349, 359 (1978)).

Whether judicial immunity exists is determined by the nature of the act complained of, rather than the simple fact that the defendant is a judge. *Forrester v. White*, 484 U.S. 219, 227 (1988) (observing that "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches").  Absolute judicial immunity is only limited for functions "not normally performed by a judge" and which are outside his or her "judicial capacity," or for "judicial actions taken in the clear absence of all jurisdiction." *See Cok v. Consentino*, 876 F.2d 1, 2 (1st Cir. 1989); *Stump*, 435 U.S. at 355.  Judicial acts "are those that are 'intimately associated' with the judicial function." *Nystedt v. Nigro*, 700 F.3d 25, 31 (1st Cir. 2012) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)).  In addition to the "bedrock judicial function … of … adjudication of disputes," "[o]ther traditional functions include such things as 'weighing evidence, making factual findings, reaching legal determinations, choosing sanctions, and expounding reasons for [ ] decisions.'" *Goldstein v. Galvin*, 719 F.3d 16, 25 (1st Cir. 2013) (quoting *Coggeshall v. Mass. Bd. of Registration of Psychologists*, 604 F.3d 658, 663 (1st Cir. 2010)).  Plaintiff's allegations against Judges Sweeney and Goodwin fall squarely within their capacities as judges and nothing in the complaint suggests that they acted without jurisdiction.

15

Plaintiff's myriad claims against Judge Sweeney arise from statements she made in memoranda of decision and court proceedings, her management of Plaintiff's case, and her entry of final judgment in favor of the state court defendants, all traditional judicial functions.  Plaintiff's more limited claim against Judge Goodwin relates only to her alleged failure to notify him about a Rule 16 conference, a procedural function well within the realm of a judge.

Plaintiff makes an argument in his opposition to the Commonwealth Defendants' motion to dismiss that Judge Sweeney acted in the absence of jurisdiction between August 30, 2018, when she allegedly took a medical leave of absence, through March 8, 2019, when she entered judgments of dismissal against each of the individual defendants in the underlying action, because there is no docket entry or other type of notification that she was reinstated as a judge following her leave.  Plaintiff offers no legal support for his argument that Judge Sweeney needed to be reinstated, nor was the court able to discern any.  To the contrary, under the Massachusetts Constitution, judges, once appointed, serve for their lifetimes or until mandatory retirement at age 70.  Mass. Const. art. XCVIII.  There is no allegation in the complaint that Judge Sweeney was subject to mandatory retirement during the pendency of Plaintiff's case.  Moreover, "[t]he 'scope of ... jurisdiction must be construed broadly where the issue is the immunity of the judge,' *Stump ...,* 435 U.S. at 356, and a judge will doff the cloak of immunity only when he conducts proceedings over which he lacks any semblance of subject-matter jurisdiction."  *Di Giambattisa v. McGovern*, No. 92-1168, 1992 WL 214444, at *2 (1st Cir. 1992).  In Massachusetts, the Superior Court has original jurisdiction of civil actions for money damages so long as there is a minimum amount in controversy.  *See* Mass. Gen. Laws ch. 212, § 3.  Based on the allegations of Plaintiff's complaint, the Superior Court had jurisdiction over

Plaintiff's malpractice proceeding and, thus, Judge Sweeney did not act in the absence of

jurisdiction as Plaintiff argues.

Regarding Judge Goodwin, Plaintiff argues that she was engaged in a ministerial and not

an adjudicatory act when she presided over a pre-trial conference.  The court readily rejects this

argument.  Presiding over court appearances is an inherently judicial act.  The fact that the

conference concerned the management of the case does not change this conclusion.

Thus, the Court finds that judicial immunity protects Judges Sweeney and Goodwin from

Plaintiff's claims.[7]

2.  *Quasi-Judicial Immunity*

Similarly, even if the court had jurisdiction to hear Plaintiff's claims against Gentile and

Cignoli, which it does not, they would be shielded by quasi-judicial immunity from Plaintiff's

claims.  "The doctrine of quasi-judicial immunity provides absolute immunity for those who

perform tasks that are inextricably intertwined with the judicial function."  *Nystedt*, 700 F.3d at

30 (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *Coggeshall*, 604 F.3d at 662–63)

(further citation omitted).  For this purpose, judicial function is defined as the adjudication of

disputes between parties.  *Id.* at 31 (citing *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435

(1993)).  Thus, the First Circuit has extended absolute immunity to court clerks.  S*lotnick v.*

*Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980) (extending judicial immunity to a clerk who filled

---

[7] Nor does Plaintiff fare any better in seeking declaratory relief against Judge Sweeney.  Section 1983 expressly limits the availability of injunctive relief against judges: "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983.  Plaintiff does not allege that any declaratory decree has been violated or that declaratory relief was unavailable in his state court proceedings.  As such, the court lacks the authority under § 1983 to grant Plaintiff's requests for declaratory or injunctive relief against Judge Sweeney.

out commitment papers based on the official directives of the judge); *Slotnick v. Staviskey*, 560 F.2d 31, 32 (1st Cir. 1977) ("[T]he state court judge enjoys absolute immunity from suit under § 1983 ... as does his clerk...."); *Mangianfico v. Stanton*, No. C.A. No. 19-10490-ADB, 2019 WL 1284819, at *3 (D. Mass. Mar. 20, 2019) ("Court clerks perform tasks that are inextricably intertwined with the adjudication of disputes, and courts, including the First Circuit, have recognized that they may be entitled to quasi-judicial immunity.").

Here, Plaintiff's allegations against Clerks Gentile and Cignoli, between whom he does not differentiate, all relate to acts or omissions while assisting Judges Sweeney and Goodwin in Plaintiff's state court proceeding. He alleges that they entered the dismissal judgment in favor of Mercy, "cancelled" certain of his pleadings, failed to notify him of a Rule 16 conference, and failed to mark-up a motion to compel filed by Mercy. These are functions directly related to judicial functions and regularly performed by clerks.

Plaintiff argues that Clerks Gentile and Cignoli are not protected by quasi-judicial immunity because they "fabricated new facts and thereby have 'committed fraud on the court,'" violating his clearly established rights (Dkt. No. 13 at 7). However, the First Circuit has stated that the entitlement to judicial immunity is to "absolute immunity from civil liability for any normal and routine judicial act …. This immunity applies no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive." *Cok*, 876 F.2d at 2. The court has held that this same scope applies in cases of quasi-judicial immunity. *Brown v. Newberger*, 291 F.3d 89, 94 (1st Cir. 2002). Thus, even if Plaintiff's allegations are true, it does not strip Clerks Gentile and Cignoli of their entitlement to quasi-judicial immunity.

Therefore, Clerks Gentile and Cignoli are entitled to absolute quasi-judicial immunity

from Plaintiff's claims.

**V.      CONCLUSION**

For the above-stated reasons, the Commonwealth Defendants' (Dkt. No. 10) and Mercy's

(Dkt. No. 8) motions to dismiss are GRANTED and this action is DISMISSED with prejudice.

It is so ordered.

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED:  August 29, 2022